IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DONNELL JOSEPH,                          §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §    CIVIL ACTION NO. H-16-2892
                                         §
NANCY A. BERRYHILL,[1]                    §
ACTING COMMISSIONER OF THE               §
SOCIAL SECURITY ADMINISTRATION,          §
                                         §
          Defendant.                     §

<u>**MEMORANDUM OPINION**</u>

Pending before the court[2] are Plaintiff's Motion for Summary Judgment (Doc. 10) and Defendant's Cross-Motion for Summary Judgment (Doc. 11).  The court has considered the motions, the responses, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART** and Defendant's motion is **DENIED**.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under

---

[1]     Carolyn W. Colvin was the Commissioner of the Social Security Administration ("SSA") at the time that Plaintiff filed this case but no longer holds that position.  Nancy A. Berryhill is Acting Commissioner of the SSA and, as such, is automatically substituted as Defendant.  <u>See</u> Fed. R. Civ. P. 25(d).

[2]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  <u>See</u> Doc. 9, Ord. Dated Jan. 9, 2017.

Title II of the Social Security Act ("the Act").

## A.  Medical History

Plaintiff was born on December 8, 1967, and was forty-six years old on the alleged disability onset date of November 3, 2014.[3]  Plaintiff, who graduated from high school, served in the United States Army from August 1986 to January 2008 and worked as a letter carrier for the United States Postal Service ("USPS") from November 2008 to November 2014.[4]  The medical records generally support a history of treatment for back pain and depression preceding the alleged onset date and continuing thereafter.[5]

Prior to the alleged onset date, Jennie Hall, M.D., ("Dr. Hall") managed Plaintiff's mental health treatment on an ongoing, outpatient basis.[6]  Within two weeks after the alleged onset date, Dr. Hall saw Plaintiff for medication management and individual psychotherapy.[7]  Plaintiff reported being in a "good mood."[8]  At the time, he stated that he had recently left the USPS and had been awarded disability benefits through the Department of Veterans

---

[3]    See Tr. of the Admin. Proceedings ("Tr.") 209.

[4]    See id.

[5]    See, e.g., Tr. 339-40, 358-83, 420, 425-52, 455-511, 515-27, 649-68, 680-83, 695-705, 730-38, 742-61.

[6]    See, e.g., Tr. 437-52, 495-502, 521-27.

[7]    See Tr. 387-97.

[8]    Tr. 390-91.

Affairs ("VA") for a 100-percent service-connected disability.[9]  He also stated that he supported himself through his VA benefits and by occasionally working part time.[10]

The results of the mental status examination were within normal limits with fair insight and judgment.[11]  Dr. Hall recorded Plaintiff's most recent Global Assessment of Functioning ("GAF") score from August 2014, which the doctor determined to be sixty-five out of one hundred, a score that falls in the middle of the category for "Some mild symptoms. . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."[12]  Dr. Hall diagnosed Plaintiff with major depressive disorder, which she opined was stable.[13]  The doctor found Plaintiff to be at a low imminent risk for suicide.[14]  Dr. Hall adjusted Plaintiff's psychotropic medication and scheduled him for another appointment

---

[9]    See Tr. 391.

[10]    See id.

[11]    See Tr. 393.

[12]    Id.; Diagnostic & Statistical Manual of Mental Disorders 34 (Am. Psychiatric Ass'n 4th ed. 2000)(replaced in 2013 by the fifth edition, which abandoned the GAF scale in favor of the World Health Organization Disability Assessment Schedule 2.0).
As of the date of this appointment Plaintiff had maintained a GAF score of sixty-five for more than a year.  See, e.g., Tr. 449, 500, 526, 540.

[13]    See Tr. 393.

[14]    See Tr. 393-95.

three months later.[15]

As reflected in the medical records, Plaintiff attended five more medication management and individual psychotherapy appointments with Dr. Hall from February 13, 2015, to February 18, 2016.[16] At these appointments, Plaintiff routinely reported "making it" or "hanging in there."[17] On more than one occasion, he explicitly acknowledged that the medications were working, and he never reported experiencing medication side effects, specifically denying that he experienced any on at least one occasion.[18] Plaintiff discussed with Dr. Hall efforts "to adjust to a more 'retired' life," to overcome boredom, and to occupy his time and reported that he stayed close to home but gets out occasionally to visit family.[19] At his February 2015 appointment, he reported relying fully on the VA benefits for support.[20] At his August 2015 and February 2016 appointments, Plaintiff said that his mood was fluctuating more.[21]

Dr. Hall made adjustments to Plaintiff's medications at four

---

[15]    See Tr. 395-96.

[16]    See Tr. 649-68, 695-704, 730-38, 753-61. The notes from the appointment on March 27, 2015, are duplicated in the record. See Tr. 761-71.

[17]    See Tr. 652, 662, 731, 754, 696.

[18]    See Tr. 731, 754.

[19]    See Tr. 652, 662, 754.

[20]    See Tr. 662.

[21]    See Tr. 696, 731.

of the five appointments.[22]  The mental status examinations were
consistent and, on the whole, within normal limits.[23]  Dr. Hall
noted that Plaintiff's mood was euthymic on three occasions,
dysthymic on one occasion, and depressed on one occasion when she
also noted a bland affect.[24]  At every appointment, Dr. Hall
ascertained that Plaintiff's insight and judgment were fair, that
his GAF was 65, that his depression was stable, and that he was at
a low risk for suicide.[25]

**B.   Application to SSA**

Plaintiff applied for disability insurance benefits on January
22, 2015, claiming an inability to work since November 3, 2014, due
to major depressive disorder, degenerative joint and disc disease,
sleep apnea, cluster migraine headaches, bilateral dry eye
syndrome, Reiters Syndrome (reactive arthritis), and
gastroesophageal reflux disorder.[26]

On February 27, 2015, the SSA found Plaintiff not disabled at
the initial level of review.[27]  On July 8, 2015, the SSA again found

---

[22]   See Tr. 651, 655, 661, 666, 698-99, 734, 737.

[23]   See Tr. 654-55, 664, 698, 733, 756.

[24]   See Tr. 654, 664, 698, 733, 756.

[25]   See Tr. 655-56, 664-666, 698-700, 733-34, 756-58.

[26]   See Tr. 209, 244.

[27]   See Tr. 94-105.

Plaintiff not disabled upon reconsideration.[28] Plaintiff requested a hearing before an administrative law judge ("ALJ") of the SSA.[29] The ALJ granted Plaintiff's request and scheduled the hearing on April 19, 2016.[30]

Prior to the hearing, Plaintiff submitted the VA's disability decision on Plaintiff's claim for increased disability evaluation.[31] The letter attached to the Rating Decision was dated January 20, 2016, and notified Plaintiff that the VA increased the disability percentage of one service-connected condition.[32] That condition — Reiter's syndrome with degenerative joint and disc disease of the lumbosacral spine — carried a new disability percentage of twenty percent.[33]

The VA did not change the disability percentages assigned to ten other service-connected medical conditions claimed by Plaintiff.[34] Those conditions and the assigned percentages were: major depressive disorder and insomnia disorder (70%); sleep apnea with continuous positive airway pressure (CPAP) machine (50%); cluster migraine headaches (30%); Reiter's syndrome of the left hip

---

[28] See Tr. 106-18.

[29] See Tr. 133-34.

[30] See Tr. 32-86, 147-52.

[31] See Tr. 773-88.

[32] See Tr. 773.

[33] See id.

[34] See Tr. 774.

(10%); Reiter's syndrome of the right hip (10%); gastroesophageal reflux disorder (10%); right ankle Achilles tendon rupture (10%); left leg radiculopathy (10%); degenerative disc and joint disease of the cervical spine (10%); and right ankle scars (0%).[35] The letter further stated:

> Entitlement to individual unemployability is denied because you are not found to be incapable of gainful employment based on a single service-connected disability.
>
> . . . .
>
> Your overall or combined rating remains at 100%. We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions.[36]

The attached Rating Decision explained the VA's findings in detail.[37] Particularly relevant to the pending motions, the Rating Decision explained the above statement regarding entitlement to individual unemployability:

> As your overall combined evaluation is 100 percent, additional benefits would only be payable if you were found to be unemployable based on a single disability, with additional disabilities combined to 60 percent. In this case, your unemployability would be caused by all of your service[-]connected disabilities. Therefore, additional benefits based on individual unemployability can not [sic] be established.[38]

---

[35]    Id.

[36]    Id.

[37]    See Tr. 780-88.

[38]    Tr. 787.

The Rating Decision was based, in part, on the report of a November 2015 examination by Rebekah L. Harris, Ph.D., ("Dr. Harris").[39] During the interview, Plaintiff said that he could not sit, stand, or lie down for too long because of pain, that he suffered migraine headaches three to five times a week that were relieved by lying in a dark place for about two hours, and that he had "bad depression" that was always present.[40] He also indicated that he could no longer handle the stress at his USPS job and had to quit.[41] He reported that both the medications and the psychotherapy were helping.[42]

Dr. Harris performed no testing herself but reviewed Plaintiff's digital VA folder.[43] The doctor listed Plaintiff's diagnosis as "Persistent Depressive Disorder, with anxious distress, with persistent major depressive episode, severe, secondary to Reiter's Syndrome/chronic pain."[44] Dr. Harris opined that Plaintiff's resulting occupational and social impairment included deficiencies in the areas of work, school, family relations, judgment, thinking, and/or mood.[45] She further opined

---

[39] See Tr. 781, 791-97.

[40] Tr. 794.

[41] See id.

[42] See id.

[43] See Tr. 793, 796.

[44] Tr. 791.

[45] Tr. 793.

that depression/insomnia and chronic pain worked together to produce the occupational and social impairments.[46]

## C. Hearing

At the hearing, Plaintiff, a physical medical expert, a mental medical expert, and a vocational expert testified.[47] Plaintiff's attorney mentioned the VA's disability rating, noting that seventy percent was attributable to depression and arguing that a seventy-percent restriction "appear[ed] to be inconsistent with . . . being able to maintain employment on a sustained basis."[48] The ALJ responded, "Maybe, it would not be any new evidence."[49]

The attorney solicited information from Plaintiff about his education, work history, physical and mental conditions, treatment, and limitations.[50] The questioning about Plaintiff's conditions and resulting limitations focused on depression and insomnia, although it also covered Plaintiff's other conditions, including back pain and migraine headaches.[51]

Albert Oguejiofor, M.D., ("Dr. Oguejiofor") appeared as the

---

[46] See id.

[47] See Tr. 32-86.

[48] See Tr. 34-35.

[49] Tr. 35.

[50] See Tr. 40-56.

[51] See id.

medical expert for physical impairments.[52]  He testified that Plaintiff suffered from chronic low back pain and other non-severe physical impairments and opined that Plaintiff did not meet or equal Listing[53] 1.04 for disorders of the spine for spinal disorders and was capable of medium work without additional physical restrictions.[54]

Glenn F. Sternes, Ph.D., ("Dr. Sternes") appeared as the medical expert for mental impairments.[55]  He testified that Plaintiff's diagnosis was major depressive disorder but that Plaintiff did not meet Listing 12.04 for affective disorders.[56] According to Dr. Sternes, Plaintiff was capable of simple, detailed instructions but not complex ones and was limited to occasional contact with supervisors, coworkers, and the public.[57] Dr. Sternes also opined that chronic pain would interfere with Plaintiff's ability to maintain pace and ability to concentrate and that Plaintiff, based on his own testimony, could miss up to three days a month due to migraine headaches.[58]

_____

[52]    See Tr. 58.

[53]    The regulations contain a list of disorders that are considered disabling. See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[54]    See Tr. 58-59.

[55]    See Tr. 64.

[56]    See Tr. 65.

[57]    See Tr. 66, 78.

[58]    See Tr. 67.

The ALJ asked Dr. Sternes to what degree he agreed with the
VA's Rating Decision:

> Q[:] And it sounds like you may be disagreeing to some
> extent with that. And if you do, I would like to know
> why and if you don't, you know, you are good to say,
> well, this is more of a onetime thing or something. I
> don't know what it is.

> A[:] I think we are in the ball park [sic] here.[59]

The ALJ explained that he had not yet read the VA's Rating Decision
or Dr. Harris's examination report.[60]

Plaintiff's attorney inquired whether Dr. Sternes was familiar
with VA standards and knew the meaning of the percentages
associated with Plaintiff's various impairments.[61] Dr. Sternes said
that he was not and did not.[62] The attorney also asked if Dr.
Sternes agreed that the evidence supported the VA's conclusion that
Plaintiff experienced "[n]ervous continuous depression affecting
the ability to function independently, appropriately and
effectively."[63] Dr. Sternes answered, "I would say."[64] The ALJ
asked if, by that answer, Dr. Sternes was indicating a change his
assessment of Plaintiff's residual functional capacity ("RFC"), to

---

[59]    Tr. 68.

[60]    See Tr. 69.

[61]    See Tr. 72.

[62]    See id.

[63]    Tr. 75.

[64]    Id.

11

which Dr. Sternes answered that he was not.[65]

Charles R. Poor ("Mr. Poor"), the vocational expert, considered Plaintiff's past relevant work as a letter carrier to be at a medium exertional level and semi-skilled.[66] Mr. Poor opined that, despite Plaintiff's physical and mental limitations, Plaintiff could continue to perform that job.[67] Nevertheless, without posing a hypothetical question listing all of the limitations that the ALJ found supported by the record, the ALJ asked the vocational expert to cite other types of jobs represented in sufficient numbers in the regional and national economies that Plaintiff could perform.[68] Mr. Poor listed warehouse worker, store laborer, and industrial cleaner at the medium, unskilled level and photocopy machine operator and laundry classifier at the light, unskilled level.[69] Regarding remaining on task and attending work, Mr. Poor stated that Plaintiff would need to remain on task eighty percent of the time and not be absent more than two days per month.[70]

**D.  Commissioner's Decision**

---

[65]   <u>See</u> Tr. 76.

[66]   <u>See</u> Tr. 76-77.

[67]   <u>See</u> Tr. 77-78.

[68]   <u>See</u> Tr. 79-80.

[69]   <u>See</u> Tr. 80-81.

[70]   <u>See</u> Tr. 81.

On June 6, 2016, the ALJ issued an unfavorable decision.[71] The ALJ found that Plaintiff met the requirements of the insured status through December 31, 2018, and that Plaintiff had not engaged in substantial gainful activity from November 3, 2014, through the dated of the ALJ's decision.[72]

The ALJ recognized the following impairments as severe: lumbar spine degenerative disc disease and major depressive disorder.[73] However, he found that, although Plaintiff had been diagnosed with and received treatment for hypertension, migraine headaches, and obstructive sleep apnea, these impairments were not severe singly or in combination.[74]

The ALJ thoroughly discussed Plaintiff's medical treatment for his impairments, including the information from Dr. Hall and Dr. Harris.[75]   Regarding Dr. Hall's treatment notes, the ALJ acknowledged the diagnosis of "major depressive disorder with symptoms of low energy, fluctuating moods, and sleep disturbance."[76] The ALJ stated that Dr. Hall prescribed psychotropic medications and psychotherapy sessions and noted that Plaintiff's depression

---

[71]   See Tr. 11-27

[72]   See Tr. 16-17.

[73]   See Tr. 17.

[74]   See id.

[75]   See Tr. 17-22.

[76]   Tr. 20.

13

was stable and that Plaintiff reported that the medications helped and his mood was under control.[77]

The ALJ also addressed Dr. Harris's examination report.[78] The ALJ summarized Dr. Harris's opinions about Plaintiff's occupational and social impairments resulting from his mental health disorders, but the ALJ concluded that her opinions "appear[ed] to be based primarily on [Plaintiff's] subjective complaints" because they were inconsistent with the treatment records.[79] Therefore, the ALJ found Dr. Harris's opinions to be entitled to "little probative value" in the context of SSA definitions of disability.[80]

Additionally, the ALJ addressed the VA's disability rating, acknowledging the VA's rating of 100-percent disability.[81] The ALJ stated that the rating was not binding in determining disability under SSA rules because of the difference in the criteria applied. Explaining that his decision was based on the objective evidence in the medical record and the hearing testimony, the ALJ further stated, "[D]espite the VA finding of 100% service[-]connected disability, documentation from the Department of Veterans Affairs specifically states that [Plaintiff] has not been found to be

---

[77] See id.

[78] See Tr. 22.

[79] Id.

[80] Id.

[81] See id.

incapable of gainful employment."[82]

At the third step, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of any Listing.[83] The ALJ specifically discussed Listing 1.04 and Listing 12.04.[84]

In reaching the RFC assessment, the ALJ discussed various aspects of the evidence, including the testimony of Plaintiff, Dr. Oguejiofor, and Dr. Sternes.[85] Regarding Plaintiff's testimony, the ALJ found that the objective clinical findings did not support Plaintiff's "alleged symptoms or functional limitations" because the evidence showed "no neurological deficits, no significant orthopedic abnormalities, and no serious dysfunction of the bodily organs that would preclude a limited level of medium work."[86] Concerning depression, the ALJ found "no evidence of psychotic symptoms, suicidal ideation, or serious deficits in memory or concentration that would preclude simple and detailed work."[87] Listing six psychiatric appointments from November 2014 to February 2016 at which the results of the mental status examinations were

---

[82]    Tr. 22 (citing the VA's disability decision).

[83]    See Tr. 17.

[84]    See Tr. 17-19.

[85]    See Tr. 18-24.

[86]    Tr. 21.

[87]    Id.

unremarkable, a November 2014 appointment at which Plaintiff denied depression, and a comment to Dr. Hall that he was bored at home, the ALJ found Plaintiff's testimony as to the severity of his symptoms to be inconsistent with the medical records.[88]

In contrast, the ALJ afforded "great weight" to Dr. Oguejiofor's testimony on Plaintiff's physical impairments.[89] The ALJ discussed Dr. Oguejiofor's testimony and the evidence on which he based his opinion. The ALJ found Dr. Oguejiofor's opinion to be supported by the medical record and adopted the doctor's recommendation that Plaintiff could perform medium work with no additional physical limitations.[90]

The ALJ held a similar opinion of Dr. Sternes' testimony, affording it "great weight" as well.[91] In support of the weight given, the ALJ explained that Dr. Sternes was able to review the medical record, to hear Plaintiff's testimony, and to observe the Plaintiff in person, which allowed the medical expert to resolve any inconsistencies in the record.[92] The ALJ elaborated on Dr. Sternes' opinion and the supporting medical evidence cited by Dr.

---

[88]    See Tr. 21-22.

[89]    Tr. 23.

[90]    See Tr. 22-23.

[91]    Tr. 23.

[92]    See Tr. 23-24.

Sternes.[93]  The ALJ stated about the medical expert's testimony:

> As to concentration, persistence, or pace, [Plaintiff] would have difficulty maintaining pace. [Plaintiff's] decreased concentration would prevent him from performing assembly line work.  As to the opinion [of Dr. Harris], Dr. Stearns [sic] opined he and the [sic] Dr. Harris were in the "ballpark."  On cross-examination, [Plaintiff's] representative [asked] if mild memory loss could cause an individual to be off task for 25% of the time.  Dr. Stearns [sic] stated 25% of the time would amount to two hours off task in an 8-hour day, which sounded high.  Dr. Stearns [sic] stated the increase in time off task would likely correlate with stress on the job.  With regards to evidence that [Plaintiff's] depression and anxiety interfered with his ability to function independently and appropriately, Dr. Stearns [sic] stated that he agreed with this statement but he declined to amend his [RFC].[94]

The ALJ adopted Dr. Sternes' RFC assessment on Plaintiff's mental limitations.[95]

The ALJ concluded that Plaintiff was capable of performing medium work with simple or detailed instructions with the additional limitations of never being a member of a team, only occasional contact with the public not as a component of the job, and occasional contact with supervisors and coworkers.[96]  Based on Mr. Poor's testimony, the ALJ found Plaintiff capable of performing his past work as letter carrier.[97]

However, the ALJ decided, based on the cross-examination of

---

[93]    Id.

[94]    Tr. 23.

[95]    See Tr. 19, 23.

[96]    Tr. 19.

[97]    See Tr. 24.

Mr. Poor, to inquire whether there were other jobs more suitable for Plaintiff.[98]  The ALJ relied on Mr. Poor's response to that inquiry in which he identified four representative occupations that Plaintiff RFC could perform: warehouse worker, industrial cleaner, photocopy machine operator, and laundry classifier.[99]  The ALJ also cited Mr. Poor's answer to the additional inquiries about remaining on task and missing work and found that the record supported Plaintiff's ability to meet the minimum requirements that Mr. Poor gave for employability.[100]  Therefore, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of the decision.[101]

Plaintiff appealed the ALJ's decision and submitted a letter dated August 18, 2016, from Dr. Hall.[102]  Dr. Hall's letter stated:

> [Plaintiff] has been under my care for Major Depressive disorder, along with anxiety symptoms, and is treated with medication management and individual supportive psychotherapy at least once each quarter.  He suffers from depressed and anxious mood, low energy and motivation, poor concentration, with feelings of helplessness and hopelessness.  He also has intermittent suicidal ideation, but has no current ideation, intent or plan.  Despite his compliance with all aspect[s] of treatment, [Plaintiff] continues to have persistent mood and anxiety symptoms.  His symptoms have affected him in the workplace, such that he has been unable to gain or

---

[98]  See Tr. 24-25.

[99]  See Tr. 25-26.

[100]  See Tr. 26.

[101]  See Tr. 27.

[102]  See Tr. 9-10.

maintain employment in the past 2 years. At this point[,] due to the persistence and severity of his illness, it is my professional opinion that he is permanently disabled and unemployable.[103]

On August 31, 2016, the Appeals Council denied Plaintiff's request for review because it "found no reason under [the] rules to review the [ALJ's] decision."[104] The Appeals Council explicitly stated that it considered both Plaintiff's arguments for reversal of the ALJ's decision and the newly submitted medical source statement from Dr. Hall, as well as whether the ALJ's "action, findings, or conclusion" was contrary to the weight of evidence.[105] The Appeals Council's ruling transformed the ALJ's decision into the final decision of the Commissioner.[106] After receiving the Appeals Council's denial, Plaintiff sought judicial review of the decision by this court.[107]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

---

[103]     Tr. 800.

[104]     <u>See</u> Tr. 1-4.

[105]     <u>See</u> Tr. 2.

[106]     Tr. 1.

[107]     <u>See</u> Doc. 1, Pl.'s Orig. Compl.

## A.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be

considered to determine whether he can do other work. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520. The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

**B.  Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." Id. The Commissioner has the responsibility of deciding any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). In other words, the court is to defer to the decision

of the Commissioner as much as is possible without making its review meaningless.  Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  In his motion, Plaintiff asserts that the ALJ's decision contains the following errors: (1) failure to give any weight to the VA's disability rating; (2) failure to follow the regulations, which prejudiced Plaintiff; and (3) failure to give any weight to Dr. Hall's August 2016 letter.  Defendant argues that the ALJ followed the correct legal standards, and his decision is supported by substantial evidence.

### A.   The VA's Disability Rating and Prejudice

The VA and the SSA are governmental agencies that separately administer programs to provide disability benefits.  Compare 38 C.F.R. §§ 4.1-4.31 (explaining the VA's procedures for rating disabilities), with 20 C.F.R. §§ 404.1501-404.1599 (explaining the SSA's procedures for determining disability).  The programs employ different criteria in analyzing disability.  See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

Although a disability determination by another governmental agency is not binding on the SSA, such a determination "is evidence that is entitled to a certain amount of weight and must be considered by the ALJ."  Id.; see also 20 C.F.R. § 404.1504 (discussing disability determinations by other organizations and

governmental agencies). Generally, because a VA rating specifically makes a finding on disability, it, "like a physician's finding, constitutes evidence 'entitled to great weight.'" <u>See Latham v. Shalala</u>, 36 F.3d 482, 483 (5th Cir. 1994) (quoting <u>Rodriquez v. Schweiker</u>, 640 F.2d 682, 686 (5th Cir. 1981)). An ALJ may discount a VA rating only if valid reasons are cited. <u>See Chambliss</u>, 269 F.3d at 522 ("ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so.").

Here, the ALJ took "notice" of the VA's disability rating in his opinion and remarked that it was not binding on the SSA.[108] As the reason for rejecting the VA's disability rating, the ALJ cited the VA's finding that Plaintiff was not entitled to "individual unemployability benefits." The ALJ did not explain how the VA's "individual unemployability" standard applied to Plaintiff's situation.

The regulations that outline the VA's system for rating disabilities explain that the disability rating "is based primarily upon the average impairment in earning capacity." 38 C.F.R. § 4.15. "Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. § 4.15. When an

---

[108]    Tr. 22.

individual's rating is less than 100 percent, that individual still may be deemed unemployable if the VA determines that the individual would be "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a). The regulation outlines the eligibility requirements for "individual unemployability" in such circumstances. See 38 C.F.R. § 4.16(a).

The VA's decision on Plaintiff's disability rating explained the application of the "individual unemployability" regulations to Plaintiff's situation:

> Entitlement to individual unemployability is denied because you are not found to be in capable [sic] of gainful employment based on a single service[-]connected disability.
>
> As your overall combined evaluation is 100 percent, additional benefits would only be payable if you were found to be unemployable based on a single disability, with additional disabilities combined to 60 percent. In this case, your unemployability would be caused by all of your service[-]connected disabilities. Therefore, additional benefits based on individual unemployability can not [sic] be established.[109]

The poorly constructed first sentence above does not mean that the VA found Plaintiff capable of gainful employment. As is clarified in the subsequent sentences, Plaintiff was unemployable based on his combined rating of 100 percent, and he qualified for unemployability benefits on that basis. The "individual unemployability" regulations did not apply to Plaintiff because

---

[109]   Tr. 787.

they only benefit those veterans with less than a total disability rating. If those veterans qualify, they are entitled to collect full benefits.

The ALJ's rejection of the VA's disability decision appears to be based on a misunderstanding of the VA regulations. Thus, the only reason cited for discounting the VA's disability rating was not valid. With a better understanding of VA regulations, the Commissioner can and must reconsider the VA's decision, explain what weight that should be given to it, and outline the reasons for the weight given if less than great weight. The court cannot predict how the Commissioner's reconsideration of the VA's Rating Decision might affect the ultimate disability determination. Even if possible, it is not the court's prerogative to make that determination in the first instance.

Accordingly, Plaintiff's argument that the ALJ's failure to follow regulations prejudiced Plaintiff cannot be addressed until the Commissioner reconsiders the weight given the VA's decision. Plaintiff presented another argument in response to Defendant's motion, regarding the meaning of the ALJ's failure to give any weight to the VA's disability rating as it relates to the weight analysis of Dr. Harris's report and Dr. Sternes' testimony. This argument is also moot, as reconsideration of the VA's decision may affect other aspects of the SSA's disability decision.

**B.  Dr. Hall's Letter**

In addition to disability determinations by other agencies, the ALJ also must evaluate every medical opinion in the record and decide what weight to give each. <u>See</u> 20 C.F.R. § 404.1527(c). The regulations require that, when a treating source's opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R. § 404.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188, at *1. However, an opinion that an individual is disabled is not a medical opinion but, rather, is a determination reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

With regard to Dr. Hall's August 2016 letter, it was not provided in time for the ALJ to address it in his June 2016 decision. However, the Appeals Council stated, in its denial of Plaintiff's request for review, that it had considered the letter. Although the Appeals Council is required to consider new, material evidence, the Appeals Council is not required to discuss it. <u>See Higginbotham v. Barnhart</u>, 405 F.3d 332, 335 n.1 (5th Cir. 2005)(explaining that the discussion requirement was suspended).

The letter included Dr. Hall's opinion that Plaintiff was "permanently disabled and unemployable;"[110] however, that was not her decision to make and, therefore, deserved no weight. The

---

[110]    Tr. 800.

remainder of the letter is not wholly consistent with Dr. Hall's own treatment notes. For example, she stated in her letter that Plaintiff experienced "intermittent suicidal ideation,"[111] but her treatment notes indicated that Plaintiff consistently denied suicidal ideation throughout the time Dr. Hall treated Plaintiff and that Dr. Hall always rated Plaintiff as low risk for suicide. Dr. Hall's statement in the August 2016 letter that Plaintiff experienced "persistent mood and anxiety symptoms"[112] was at odds with mental status examinations that were consistently unremarkable and, more often than not, described his mood as euthymic without any sign of anxiety. Finally, the doctor's opinion that Plaintiff was unemployable was contrary to her GAF assessment that placed him in the range of mild symptomatology.

On remand, the Commissioner need not give further consideration to Dr. Hall's letter.

## IV. Conclusion

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion and **DENIES** Defendant's motion. The case is **REMANDED** for further consideration as explained herein.

**SIGNED** in Houston, Texas, this 18th day of October, 2017.

---

[111]   Id.

[112]   Id.

U.S. MAGISTRATE JUDGE